FILED
2020 Jul-27  PM 01:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BRENDA LEE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:18-cv-01816-KOB** |
| | ) | |
| **ADDICTION AND MENTAL** | ) | |
| **HEALTH SERVICES, LLC** | ) | |
| **d/b/a BRADFORD HEALTH** | ) | |
| **SERVICES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on a motion for summary judgment filed by

Defendant Addiction and Mental Health Services, LLC d/b/a Bradford Health Services.  (Doc.

24).  Bradford seeks summary judgment on Plaintiff Brenda Lee's complaint alleging retaliation

and interference under the Family and Medical Leave Act.  Because genuine issues of material

fact exist regarding whether Bradford impermissibly terminated Ms. Lee because of her use of

FMLA leave, the court will deny Bradford's motion for summary judgment.

This opinion also addresses Ms. Lee's motion to strike the exhibits to Bradford's

summary judgment reply brief, and any argument related to the exhibits, on the basis that the

exhibits were not timely filed under this court's scheduling order and one of the exhibits contains

impermissible hearsay.  (Doc. 36).  Because the exhibits specifically rebut arguments raised in

Ms. Lee's response and because the court does not rely on the alleged hearsay, the court will

deny Ms. Lee's motion to strike.

1

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Beginning in 1992, Ms. Lee worked in the billing department for Bradford, an addiction treatment provider.  She received good reviews and her coworkers considered her a good employee.

Ms. Lee had numerous health problems, and, in August 2015, suffered a heart attack while at work.  Bradford approved FMLA leave for Ms. Lee so that she could recover from her heart attack and allowed her four months of leave—more than required under the FMLA.   Ms. Lee returned to work at Bradford in December 2015, but continued to suffer from health issues. She frequently missed work for illness and doctor's appointments throughout 2016.  In December 2016, Ms. Lee's supervisor Jason Scoggins and a Human Resources Director named Sydnee Bender issued Ms. Lee a warning about excessive absenteeism.  The following day, Ms. Lee submitted a request for FMLA leave to begin on December 15, 2016.

According to Ms. Bender, after Ms. Lee submitted her request, Bradford's Chief Financial Officer, Chip Stephens, told Ms. Bender that he wished she could pretend that she had not gotten Ms. Lee's FMLA request.  Ms. Bender also stated that Mr. Stephens had been trying to get rid of Ms. Lee for some time based on her absences.  Mr. Stephens himself admitted in deposition testimony that he knew about Ms. Lee's absences and had concerns about them.

On January 7, 2017, Bradford notified Ms. Lee that she met the basic criteria for FMLA eligibility, but informed Ms. Lee that she needed a medical certification from her physician so that Bradford could determine whether her absences were covered under the FMLA.  On January 11, 2017, Ms. Lee's physician, Dr. Zaremba, submitted a medical certification form to Bradford, but Bradford determined that the form was incomplete.

Bradford received a more complete form from Dr. Zaremba's office on January 31, 2017; Bradford and Ms. Lee's accounts differ regarding whether Dr. Zaremba's office sent the form directly to the Human Resources department at Bradford or to Ms. Lee.  The form included a notation stating that Ms. Lee would have incapacitating flare ups one time per two to three weeks.  The word "weeks" had been handwritten over the scratched-out word "months." Bradford again found the form insufficient, and Dr. Zaremba's office filled out the form again. Bradford received the amended form on February 2, 2017.  The February 2, 2017 form did not have the "weeks" notation like the January 31, 2017 form.  Ms. Lee was then hospitalized from February 6 through February 10, 2017.  Bradford approved Ms. Lee for FMLA leave on February 13, 2017, covering 12 days of absences.

On March 7, 2017, Bradford terminated Ms. Lee's employment.  Bradford told Ms. Lee that it was terminating her because she had forged or altered her FMLA paperwork.  Bradford's Chief Financial Officer, Mr. Stephens, made the decision to terminate Lee.

Ms. Lee then filed the instant lawsuit against Bradford.  In an amended complaint, Ms. Lee alleges that Bradford violated the FMLA by interfering with her right to take FMLA leave and retaliating against her for exercising her rights to take FMLA leave.  (Doc. 20).  Bradford subsequently filed its motion for summary judgment on all of Ms. Lee's claims, with attached evidence.  Ms. Lee responded along with her own evidence, and Bradford filed a reply.

Bradford attached three short exhibits to its summary judgment reply brief: an excerpt from Ms. Lee's January 31, 2017 certification form showing the handwriting at issue, a supplemental declaration from Ms. Clark, and a declaration from Tamara Foster, an employee who had been put on performance improvement plan.  (Doc. 35).  Ms. Lee then moved to strike the exhibits and any related argument.  (Doc. 36).

3

After the instant motions came under submission, Ms. Lee passed away.  This court granted a motion to substitute the personal representatives of Ms. Lee's estate, Thomas Sidney Abney, Jr. and Jennifer Leah White Abney, as the Plaintiff's parties in this case.  However, for clarity's sake, the court will continue to refer to the Plaintiff as "Ms. Lee" in this opinion.

## II.     STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases that present no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: whether any genuine issues of material fact exist, and, if not, whether the moving party is entitled to judgment as a matter of law.  *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  But, inferences can create genuine issues of material fact.  *Carlson v. FedEx Ground Package Systems, Inc.*, 787 F.3d 1313, 1318 (11th Cir. 2015).

In response, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial.*'"  *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added).

The court must "view the evidence presented through the prism of the substantive evidentiary burden" to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party.  *Anderson*, 477 U.S. at 254.  The court must refrain from weighing the evidence and making credibility determinations because these decisions belong to a jury.  *See id.* at 255.

Further, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party.  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999).  After both parties have addressed the motion for summary judgment, the court must grant the motion *only if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.

### III.   ANALYSIS

#### a.  Motion for Summary Judgment

In its motion for summary judgment, Bradford argues that it should be entitled to judgment as a matter of law because Ms. Lee cannot make the requisite showings for either her

FMLA retaliation claim or her FMLA interference claim.  (Doc. 25).  Bradford asserts that Ms.

Lee cannot succeed on her retaliation claim because she cannot show that her termination was

causally related to protected conduct, as Bradford can show a legitimate non-discriminatory

reason for Ms. Lee's termination—the forgery of her FMLA paperwork.

      Bradford goes on to say that Ms. Lee cannot show that the reason for her termination was

pretextual because the record shows that Bradford had a good faith belief that Ms. Lee forged her

FMLA paperwork.  In support of its argument, Bradford asserts that "weeks" on Ms. Lee's form

"matches Plaintiff's handwriting on the first page of the form."  (Doc. 25 at 16).  Bradford also

stated that its belief sprang from the fact that the form returned on February 2, 2017 did not have

"weeks" written in like the January 31st form.  Bradford adds that a Human Resources employee,

Nissie Clark, called Dr. Zaremba's office and spoke to someone named Kay, who said that the

office's copy of the form said "months," not "weeks."  Bradford also states that Ms. Lee had

motive to alter the paperwork to excuse more of her absences.  Bradford tries to head Ms. Lee's

arguments off at the pass by stating that indications that Mr. Stephens was unhappy with Ms.

Lee's absences do not show pretext because they do not show that Mr. Stephens did not have a

good faith belief that Ms. Lee forged her medical forms.  Finally, Bradford argues that Ms. Lee's

FMLA interference claim essentially clones her retaliation claim and likewise fails.

      In response, Ms. Lee argues that Mr. Stephens was aware of her protected activity and

had a problem with her continued FMLA absences.  (Doc. 31).  Ms. Lee also argues that Mr.

Stephens did not actually have a good faith belief that Ms. Lee altered the form because the

circumstances surrounding the submission of the form did not suggest that she altered it.  She

states that Dr. Zaremba's office faxed the allegedly altered form directly to Ms. Clark in Human

Resources, that she called Dr. Zaremba's office and they said no one from Bradford had called

the office, and that Mr. Stephens did not conduct any kind of investigation into the alleged forgery.

Additionally, Ms. Lee argues that her absences were consistent with prior medical paperwork and that Mr. Stephens did not subject her to progressive discipline, although another employee who committed a similar infraction received progressive discipline.  Ms. Lee argues that, against that background, a genuine issue of material fact exists regarding whether Bradford terminated her for her use of FMLA leave.  Ms. Lee concedes the similarity for the analysis of her FMLA retaliation and interference claims and argues that her interference claim likewise survives summary judgment.  (Doc. 31 at 32).

In reply, Bradford again argues that Ms. Lee cannot show causation or pretext, as Bradford terminated her because of a good faith belief that she altered her FMLA documentation.  (Doc. 34).  Bradford also argues that Ms. Lee cannot defeat summary judgment simply by contesting the wisdom of her termination.  Further, Bradford attached exhibits including a declaration from Ms. Clark saying that the Human Resources fax machine was not actually in her office, but in the cubicle of another Human Resources employee, and that she called Dr. Zaremba's office the day *before* Bradford terminated Ms. Lee.  Bradford also included a declaration from Tamara Flowers, the Bradford employee who received progressive discipline and was put on a performance improvement plan.

The FMLA entitles an eligible employee to 12 weeks of leave during a 12-month period because of a serious health condition that prevents the employee from performing the functions of her position.  29 U.S.C. § 2612(a)(1).  The FMLA prohibits an employer from interfering with, restraining, or denying an eligible employee the exercise of any right to FMLA leave.  *Id.* § 2615.  To protect employees' rights, the FMLA creates two causes of action, one for

interference—in which an employee alleges that an employer denied or otherwise interfered with her rights under the FMLA—and one for retaliation—in which an employee alleges discrimination by her employer based on activity protected under the FMLA. *Jones v. Gulf Coast Health Care of Delaware, LLC*, 854 F.3d 1261, 1267 (11th Cir. 2017).

To succeed on a claim of interference, an employee must show by a preponderance of the evidence that her employer denied her a benefit under the FMLA to which she was entitled. *Martin v. Brevard Cty. Pub. Schs.*, 543 F.3d 1261, 1266-67 (11th Cir. 2008). An employee need not prove that her employer had a discriminatory motive or intent in interfering with her rights under the FMLA; she only has to show interference with those rights. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010).

A retaliation claim, on the other hand, has an "increased burden" compared to an interference claim because the plaintiff must show that the employer's actions were motivated by the plaintiff's engagement in protected activity under the FMLA. *Strickland v. Water Works & Sewer Bd. of Birmingham,* 239 F.3d 1199, 1206–07 (11th Cir. 2001). Essentially, a plaintiff must show that she suffered an adverse employment action that was "motivated by an impermissible retaliatory or discriminatory animus" based on her protected activity. *Id.* at 1207.

In this case, the parties agree that the analysis for Ms. Lee's retaliation claim effectively subsumes the analysis for her interference claim. Necessarily, a showing that Bradford improperly terminated Ms. Lee with discriminatory animus entails a showing that Bradford improperly denied Ms. Lee FMLA leave to which she was entitled by terminating her. *See Martin*, 543 F.3d at 1266-67. To succeed in her case, Ms. Lee must meet the heightened burden for a retaliation claim by showing that Bradford terminated her based on discriminatory animus because of her use of FMLA leave. *See Strickland,* 239 F.3d at 1206–07. So, the court will

address Ms. Lee's FMLA interference and retaliation claims together through the lens of the heightened burden for her retaliation claim.

In this case, Ms. Lee has no direct evidence that Bradford fired her out of discriminatory animus based on her use of FMLA leave. *See Strickland,* 239 F.3d at 1206–07. Where a plaintiff lacks direct evidence of discrimination, courts apply the *McDonnell Douglas* burden-shifting framework, which begins by requiring the plaintiff to make a *prima facie* showing of discrimination. *See Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To make a *prima facie* showing of retaliation under the FMLA, a plaintiff must show: "(1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to a protected activity." *Pereda v. Brookdale Senior Living Communities, Inc.,* 666 F.3d 1269, 1275 (11th Cir. 2012) (quoting *Walker v. Elmore County Bd. of Educ.,* 379 F.3d 1249, 1252 (11th Cir. 2004)).

Here, the parties do not dispute that Ms. Lee can make the first two prongs of a *prima facie* showing of retaliation under the FMLA. *See Pereda,* 666 F.3d at 1275. Ms. Lee engaged in statutorily protected activity when she took FMLA leave on multiple occasions, including shortly before her termination. She also suffered an adverse employment decision when Bradford terminated her employment. So, whether Ms. Lee can make a *prima facie* showing of retaliation and shift the burden of proof to Bradford depends on whether she can show a causal connection between her use of FMLA leave and her termination. *See id.*

A plaintiff can meet the causal connection requirement by showing that the protected activity and adverse employment action were "not wholly unrelated." *Brungart,* 231 F.3d at 799. Typically, a plaintiff can show that her FMLA leave and adverse employment action were not

wholly unrelated by showing that the decision maker was aware of the protected conduct at the time the employer made the adverse employment action. *Id.* Close temporal proximity between a plaintiff's protected conduct and an adverse employment action generally creates a genuine issue as to causal connection. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006). But, proximity in time between the protected activity and the materially adverse action does not, by itself, establish the causal connection required by the third element of the *prima facie* case, although it can buttress other evidence and indicate whether the decision maker had notice of the protected activity. *Strickland*, 239 F.3d at 1207 n.10.

Here, viewing all evidence and inferences in the light most favorable to the Ms. Lee—the nonmoving party—Ms. Lee can show a causal connection between her FMLA leave and her termination, and, thus, can make a *prima facie* showing of FMLA retaliation. *See Graham*, 193 F.3d at 1282; Fed. R. Civ. P. 56. The record shows that Mr. Stephens, the decision-maker in this case, was aware of Ms. Lee's use of FMLA leave. *See Brungart,* 231 F.3d at 799. Mr. Stephens stated in his deposition that he knew of Ms. Lee's absences and told other employees that he had concerns about her absences; he also described the impetus for her termination as arising from the attempted use of FMLA leave, in that she purportedly altered FMLA paperwork. (Doc. 26-4 at 42–43, 53, 55). Additionally, Ms. Bender testified that Mr. Stephens had been trying to get rid of Ms. Lee for years and that he told Ms. Bender that he wished she could pretend that she had not received Ms. Lee's December 2016 FMLA request. (Doc. 26-7 at 17; doc. 33-6 at ¶ 18). Mr. Stephens' uncontested awareness of Ms. Lee's use of FMLA leave, coupled with Ms. Bender's testimony, tends to show causal connection between Ms. Lee's termination and her use of FMLA leave. *See Brungart,* 231 F.3d 799.

Temporal proximity further bolsters the apparent relation between Ms. Lee's FMLA leave and her termination.  Ms. Lee had taken FMLA leave within the previous weeks and was in the process of taking further FMLA leave when Bradford terminated her; so extremely close temporal proximity exists between her protected conduct and the adverse action of her termination.  This close temporal proximity tends to show a causal connection and buttresses the evidence that Ms. Lee's FMLA leave and her termination were "not wholly unrelated."  *See Hurlbert*, 439 F.3d at 1298; *Strickland*, 239 F.3d at 1207 n.10; *Brungart,* 231 F.3d at 799.

Bradford argues that, despite Mr. Stephens' awareness of Ms. Lee's protected activity and the evident temporal proximity between her activity and her termination, Ms. Lee cannot show a causal connection between her use of FMLA leave and her termination because of her intervening misconduct.  Bradford asserts that Mr. Stephens terminated Ms. Lee not because of her FMLA-protected activity, but because she engaged in misconduct by altering her FMLA paperwork.  The law supports the proposition that no causal connection exists when intervening misconduct caused the adverse employment action.  *See Fleming v. Boeing*, 120 F.3d 242, 248 (11th Cir. 1997) (indicating that no causal connection existed based on failure to hire where the applicant failed an essential employment test).  But, in this case, a genuine issue of material fact exists regarding whether Ms. Lee's alleged misconduct—altering FMLA paperwork—actually caused her termination.

Bradford asserts that the record shows that Mr. Stephens terminated Ms. Lee because he had a good faith belief that she engaged in misconduct by altering her FMLA paperwork, scratching out "months" on a form and changing it to "weeks" to allow herself more FMLA-covered absences.  Mr. Stephens testified in his deposition that he terminated Ms. Lee because he believed that the alteration of the FMLA certification form that the office received on January

31, 2017 was in her handwriting, though he did not ask Ms. Lee if she had altered the form, conduct a further investigation, or consult a handwriting expert.  (Doc. 26-4 at 43–25).  He stated that Ms. Clark, a human resources employee, called Dr. Zaremba's office and the office stated that their copy of the form did not have "months" crossed out and changed to weeks.  (Doc. 26-4 at 45).

Bradford supports Mr. Stephens' alleged good faith belief with testimony from Ms. Clark stating that Dr. Zaremba's office was supposed to fax the certification form to her, but, instead, faxed it to Ms. Lee in the accounting department, which allowed Ms. Lee to handwrite "weeks" instead of "months' on the form.  (Doc. 26-6 at ¶¶ 8–9, 15).  Ms. Clark also stated that a subsequent FMLA certification form that she received on February 2, 2017 did not have the change from months to weeks, and that she called Dr. Zaremba's office and spoke to someone named Kay, who said that their copy of the form did not have "months" changed to weeks.  Additionally, Bradford submitted documentary evidence to support its argument of Mr. Stephens' good faith belief; it submitted the January 31, 2017 form, which shows "weeks" written in handwriting that appears similar to Ms. Lee's handwriting on the first page of the form, and what appears to be a copy of the February 2, 2017 form without the "months" to "weeks" change.  (Doc. 26-6 at 20, 23).

But, Ms. Lee presents evidence that calls into doubt Mr. Stephens' good faith belief in her alteration of the form.  Ms. Lee stated in her deposition that she told Ms. Clark and Mr. Scoggins that she had not altered her FMLA certification.  (Doc. 26-1 at 13).  She also stated that she called Dr. Zaremba's office on the day that she was terminated and the office told her that no one from Bradford had called.  (*Id.* at 14).  She said that the handwriting on the form almost looked like hers, but wasn't hers.  (*Id.* at 32).  Ms. Lee as well as Ms. Bender also stated in a

declaration that the fax from Dr. Zaremba's office on January 31, 2017 showed that Dr. Zaremba's office sent the form directly to Ms. Clark in Human Resources via the Human Resources fax machine, not the Accounting fax machine, which another Bradford employee confirmed. (Doc. 32-1 at ¶ 18; doc. 33-6 at ¶ 33; doc. 32-3 at 16). Ms. Lee also produced evidence that Bradford did not investigate the alleged alteration of her FMLA form before terminating her, which was unusual. (Doc. 32-1 at ¶ 30, doc. 33-6 at ¶ 28).

Additionally, Ms. Lee produced evidence suggesting that Mr. Stephens was looking for an excuse to terminate her based on her FMLA-covered absences. Ms. Lee testified that Mr. Stephens treated her differently after she requested FMLA leave. (Doc. 32-1 at ¶ 25). Additionally, Ms. Bender testified that Mr. Stephens had been "trying to get rid of" Ms. Lee for years. (Doc. 26-7 at 17). Ms. Bender stated that Mr. Stephens had said multiple times that he wanted to fire Ms. Lee for her absences but he had no basis, and said that, upon learning about Ms. Lee's December 2016 FMLA request, Mr. Stephens told her that he wished she could pretend she had never gotten the request. (Doc. 33-6 at ¶¶ 18–19).

Here, when viewing the evidence and the inferences created by the evidence in the light most favorable to Ms. Lee, a genuine issue of material fact exists regarding whether Ms. Lee was terminated for misconduct, which would break the causal connection between her FMLA-protected activity and her termination. *See Graham*, 193 F.3d at 1282; Fed. R. Civ. P. 56. Ms. Lee's evidence that the form at issue was actually faxed directly to the Human Resources fax machine, as opposed to faxed to her in Accounting, creates an inference that she did not alter the form. Bradford produced evidence in its reply brief that the Human Resources fax machine was not in Ms. Clark's specific office, but Ms. Lee's evidence still calls into questions Bradford's account of events.

Further, Ms. Lee's evidence that Mr. Stephens wanted to terminate her based on her FMLA absences creates, coupled with evidence that Bradford did not perform a normal investigation before terminating her based on the alleged alteration of her FMLA form, creates a potential inference that Mr. Stephens found an excuse to terminate Ms. Lee for her absences. While much of Ms. Lee's evidence comes from self-serving testimony, she does have evidence from other parties like Ms. Bender and courts "routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving." *Feliciano*, 707 F.3d at 1253 (quoting *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir.), *as modified on denial of reh'g*, 425 F.3d 1292 (11th Cir. 2005)).

Reading the facts in this case through the prism of the evidentiary burden at that summary judgment stage, Ms. Lee has presented sufficient evidence on which a jury could reasonably find that Mr. Stephens did not actually have a good faith belief that Ms. Lee altered the form, but instead took an opportunity to terminate her because of her extensive FMLA-protected absences. *See Anderson*, 477 U.S. at 254. So, a genuine issue of material fact exists regarding whether Bradford terminated Ms. Lee for misconduct, and Bradford cannot rely on the alleged misconduct to disrupt Ms. Lee's showing of a causal connection between her protected FMLA activity and her termination.

In light of Mr. Stephens' awareness of Ms. Lee's protected conduct, the temporal proximity between Ms. Lee's protected conduct and her termination, and Mr. Stephens' potential lack of good faith in terminating Ms. Lee, Ms. Lee can show—at least at the summary judgment stage—a causal connection between her use of FMLA leave and her termination. Thus, she can make a *prima facie* showing of retaliation under the FMLA for the purposes of surviving summary judgment. *See Pereda,* 666 F.3d at 1275.

Where a plaintiff makes a *prima facie* case of FMLA retaliation, the burden under the *McDonnell Douglas* framework then shifts to the employer to articulate a legitimate reason for making the adverse employment action. *Hurlbert*, 439 F.3d at 1297. If the employer articulates a legitimate reason, the burden shifts back to the plaintiff to show that the "proffered reason for the adverse action is pretextual." *Id.*

Pretext exists where the plaintiff shows that the proffered reason was false and the decision was actually motivated by retaliation. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). A plaintiff cannot show pretext simply by contesting the wisdom of the employer's adverse decision. *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). In fact, "[t]he heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the discharge, but whether the employer really was motivated by those reasons." *Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998).

Here, the pretext analysis largely echoes the causation analysis. Bradford argues that it had a legitimate, nondiscriminatory reason for terminating Ms. Lee because Mr. Stephens had a good faith belief that Ms. Lee had forged or altered her FMLA paperwork. But, as discussed at length above, Ms. Lee has produced sufficient evidence to create a genuine issue of material fact regarding whether Mr. Stephens actually had a good faith belief that Ms. Lee had altered her FMLA paperwork. Additionally, while the handwriting of the word "weeks" on the form looks similar to Ms. Lee's—and Ms. Lee in fact admitted the similarity—it is not so clearly identical that, especially in light of the other evidence regarding Mr. Stephens' apparent desire to get rid of Ms. Lee because of her absences, a reasonable jury could not find the supposed alteration to be a pretextual reason to fire Ms. Lee for her FMLA-protected absences. Accordingly, a genuine issue of material fact exists regarding pretext. Therefore, viewing all of the facts and inferences

in the light most favorable to Ms. Lee, she can make a showing of FMLA retaliation and interference under the *McDonnell Douglas* framework to survive summary judgment.

Further, even if Ms. Lee could not strictly make a showing of FMLA discrimination under the *McDonnell Douglas* framework at this stage of the proceedings, she would still survive summary judgment.  The Eleventh Circuit has stated that "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Lewis v. City of Union city, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)).  As such, a plaintiff "will always survive summary judgment" where she presents enough circumstantial evidence to create a triable issue of fact concerning the employer's discriminatory intent.  *Id.*

A plaintiff can create a triable issue of fact to survive summary judgment "if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Lockheed-Martin Corp.*, 644 F.3d at 1328 (quotation omitted).  As discussed above, Ms. Lee presented evidence that Mr. Stephens wanted to terminate her because of her FMLA-protected absences, that Bradford did not conduct the usual level of investigation before terminating her, and that some inconsistencies exist in the story of what happened with the submission of the medical certification form.  That evidence, which suggests that Bradford could have been looking for or even fabricating a convenient excuse to terminate Ms. Lee, creates a convincing mosaic of circumstantial evidence that would allow a reasonable jury to infer intentional discrimination against Ms. Lee; so Ms. Lee survives summary judgment on her FMLA retaliation claim.  *See id.; Lewis*, 934 F.3d at 1185.  Further, because Ms. Lee survives summary

judgment on her more onerous FMLA retaliation claim, she likewise survives summary judgment on her FMLA interference claim because she can show interference with her right to take FMLA leave.  So, the court will deny Bradford's motion for summary judgment.

### b.  Motion to Strike

In her motion to strike Bradford's exhibits to its reply brief and any related argument, Ms. Lee argues that the exhibits were not timely filed under this court's scheduling order because they were not filed by the dispositive motion deadline.  (Doc. 36).  Ms. Lee also argues that some of Ms. Foster's declaration constitutes impermissible hearsay.  Ms. Lee goes on to request attorneys' fees for the motion to strike, pursuant to Fed. R. Civ. P. 56(h).

In response, Bradford argues that a party can permissibly submit evidence along with a reply brief where the evidence specifically rebuts arguments from the opposing party's response. (Doc. 37).  Bradford then describes how the exhibits specifically rebut arguments raised by Ms. Lee in her response brief.

The court finds no basis to strike Bradford's exhibits to its reply brief in this case.  As an initial matter, the court notes that the scheduling order in this case, which set a deadline for the filing of dispositive motions and supporting evidence, does *not* preclude the filing of exhibits to a reply brief.  Instead, the order governs the submission of evidence for initial motions for summary judgment without including guidance regarding response and reply briefs.

In considering the submission of evidence with a reply brief, the court finds persuasive the District Court for the Southern District of Alabama's statement that "nothing in the extant authorities, or in the Federal Rules of Civil Procedure, forbids a movant from making supplemental record submissions in a reply brief to rebut specific arguments raised by the non-movant's opposition brief."  *Hammons v. Computer Programs & Sys., Inc. (CPSI)*, No. CIV. 05-

0613-WS-C, 2006 WL 3627117, at *14 (S.D. Ala. Dec. 12, 2006).  Ms. Lee has not produced any authority calling that position into question.  So, the filing of exhibits to reply briefs can be appropriate in some circumstances.

Here, the court finds that the exhibits Bradford submitted along with its reply brief appropriately and specifically addressed arguments raised by Ms. Lee in her response brief. Additionally, as a purely practical matter, the court notes that the exhibits submitted along with Bradford's reply brief had very little impact on the outcome of this motion for summary judgment.  In fact, the court's conclusion did not rely on Ms. Foster's statement and its alleged hearsay at all. So, because the exhibits were not improper, had little practical effect, and did not support newly raised arguments, the court will deny Ms. Lee's motion to strike the exhibits.

Because of the lack of a compelling reason to strike the evidence, the court also denies Ms. Lee's motion for attorneys' fees under Fed. R. Civ. P. 56.  Ms. Lee has not presented any evidence that the exhibits were submitted in bad faith, which would allow the grant of fees under Rule 56.  *See* Fed. R. Civ. P. 56(h) (which governs affidavits and declarations submitted in bad faith).  Therefore, the court will deny Ms. Lee's motion to strike.

## IV.    CONCLUSION

In this case, the court finds sufficient genuine issues of material fact for Ms. Lee to survive summary judgment on both of her claims.  Whether Bradford, and specifically Mr. Stephens, terminated Ms. Lee because of a good faith belief that she engaged in misconduct or because of her extensive use of FMLA leave presents a genuine issue for trial.  *See Celotex*, 477 U.S. at 324.  Because that issue is key to Bradford's arguments and to Ms. Lee's FMLA claims, the court finds that both of Ms. Lee's FMLA claims survive summary judgment.  Thus, the court DENIES Bradford's motion for summary judgment.  Additionally, because Ms. Lee failed to

show that Bradford inappropriately submitted exhibits to its reply brief, the court also DENIES

Ms. Lee's motion to strike evidentiary material and argument in Bradford's reply brief.

     **DONE** and **ORDERED** this 27th day of July, 2020.

**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE